**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| RANDLE G. WILHITE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | Case No. 4:23-CV-00003-NCC |
| ) | |
| MARTIN J. O'MALLEY, ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| ) | |
| Defendant. ) | |

**MEMORADUM AND ORDER**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Martin J. O'Malley, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Randle G. Wilhite ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c) (Doc. 7). After reviewing the record, the Court finds that the Commissioner's decision was supported by substantial evidence and thus, the Court **AFFIRMS** the Commissioner's denial of Plaintiff's application.

**I.   PROCEDURAL HISTORY**

---

[1] Martin J. O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin J. O'Malley should be substituted, therefore, for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

On October 21, 2020, Plaintiff applied for DIB and SSI, alleging that he had been unable to work since February 15, 2016 (Tr. 13). Plaintiff's application was denied initially and on reconsideration (Tr. 112-13, 116-17). Plaintiff subsequently filed a Request for Hearing by Administrative Law Judge (ALJ) (Tr. 218-19). After a hearing, the ALJ issued an unfavorable decision on February 3, 2022 (Tr. 13-30). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council on February 28, 2022, but the Appeals Council declined to review the case on November 7, 2022 (Tr. 1-6). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

## II.   FACTUAL BACKGROUND

At the hearing on January 26, 2022, Plaintiff testified, *inter alia*, that he has health issues with his back, shoulder, and pituitary gland; that he takes medicine for blood pressure, anxiety, depression, pain, cholesterol, and muscle relaxants; that he sometimes experiences constipation and tiredness from the medications; that outside of some difficulty tying his shoes, he has no difficulty taking care of his personal needs; that he sometimes wears a knee brace and uses a crutch; that his general daily routine consist of laying on the couch with one leg propped up to help with the pain in his back and to keep his legs from swelling; that he can't lift a gallon of milk because of nerve damage after shoulder surgery; that he weighs 343-pounds and doctors will consider doing surgery on his knee and back once he loses weight; that he had plantar fasciatus but lost his insurance and was unable to go back to the foot doctor; and that when he walks or sits for too long, his legs swell and his back starts to hurt, preventing him from walking or sitting for extended periods.

The record contains opinion evidence regarding Plaintiff's mental functioning from one consultive examiner and two state agency psychologist and opinion evidence regarding Plaintiff's physical functioning from two examining physicians, one consulting physician and Plaintiff's long-term treating physician.

The Court accepts the facts as set forth in the parties' respective statements of fact and responses. The Court will cite to specific portions of the transcript as needed to address the parties' arguments.

### III.  LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920. Plaintiff is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). "If a [Plaintiff] fails to meet the criteria at any step in the evaluation of disability, the process ends, and the [Plaintiff] is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, Plaintiff cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b). Second, Plaintiff must have a severe impairment. 20 C.F.R. §§ 416.920(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [Plaintiff's] physical or mental ability to do basic work activities. . . ." *Id*. "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no

more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the Plaintiff has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d). If Plaintiff has one of, or the medical equivalent of these impairments, then Plaintiff is per se disabled without consideration of his age, education, or work history. *Id*.

Prior to Step Four, the Commissioner assesses the Plaintiff's residual functional capacity ("RFC"), 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), which is "the most [a Plaintiff] can still do despite [his] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the impairment must prevent Plaintiff from doing past relevant work. 20 C.F.R. §§ 416.920(f). The burden rests with Plaintiff at this fourth step to establish his RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the [Plaintiff] has the burden of showing that [he] is disabled.").

Fifth, the severe impairment must prevent Plaintiff from doing any other work. 20 C.F.R. §§ 416.920(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with Plaintiff's RFC. *Steed*, 524 F.3d at 874 n.3. If Plaintiff meets these standards, the ALJ will find him to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the [Plaintiff]." *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); *see also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the [Plaintiff], even when the

4

burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

The Commissioner's findings are conclusive upon this Court so long as it is supported by substantial evidence in the administrative record and comports with relevant legal requirements. It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the factfinder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV.   DECISION OF THE ALJ

Applying the five-step analysis, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 15, 2016, the application date; that Plaintiff had severe impairments, specifically degenerative disc disease of the lumbar spine, right knee degenerative joint disease, plantar fasciitis of the left foot, obesity, unspecified depressive disorder and

5

generalized anxiety disorder[2]; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 16). The ALJ then described Plaintiff's RFC:

> [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he is limited to occasional use of the right lower extremity for pushing and/or pulling. He can occasionally climb ramps and stairs, but never climb ladders, ropes or scaffolds. He can frequently balance and occasionally stoop, kneel, crouch and crawl. He must avoid work at unprotected dangerous heights or around unprotected dangerous machinery. He is capable of performing work that involves simple, routine and repetitive tasks with only occasional changes in the work setting and routines. He must avoid jobs that require close interaction with the public, such as retail sales, customer service or telephone solicitation type jobs.

(Tr. 22). At Step Four, the ALJ found Plaintiff was unable to perform past relevant work (Tr. 28). At Step Five, relying on the testimony of a vocational expert, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, including jobs as an eyeglass frame polisher (*Dictionary of Occupational Titles* ("*DOT*") No. 713.684-038), an ampule sealer (*DOT* No. 559.687-014), and a weight tester (*DOT* No. 539.485-010) (Tr. 29). The ALJ concluded that Plaintiff had not been under disability, within the meaning of the Act, from February 15, 2016, through the date of the decision (Tr. 30).

## V. DISCUSSION

Plaintiff argues that the ALJ's decision should be reversed because 1) the ALJ's RFC determination was not supported by substantial evidence, 2) the ALJ did not include any

---

[2] Though not mentioned in Plaintiff's brief, the Court finds there is substantial evidence in the record to support the ALJ's finding that Plaintiff's depression and anxiety impairments, while severe, did not significantly impair Plaintiff's RFC. The ALJ outlined Plaintiff's mental health history that included the findings of Plaintiff's mental residual functional capacity assessments, medical expert reports, Plaintiff's statements on his mental health, and treatment history (Tr. 19-22), and determined that the record and persuasive expert opinions "[did] not support findings of marked or extreme limitations in [Plaintiff's] functioning." (Tr. 21).

6

limitation related to Plaintiff's documented need to alternate positions, and 3) the ALJ did not properly consider the effect of Plaintiff's obesity on his other ailments.

### A. The ALJ's Assessment of Plaintiff's RFC

Plaintiff's first argument is that the ALJ's assessment of Plaintiff's RFC is not supported by substantial evidence. Plaintiff asserts that the ALJ's decision did not articulate the "consistency" factor when evaluating the opinion evidence. The Commissioner argues that the ALJ decision demonstrated careful consideration of the entire record.

Under the rules applicable to Plaintiff's claim, the ALJ must evaluate the persuasiveness of medical opinions in light of the following factors: (1) supportability (the degree to which the medical source presents objective medical evidence and supporting explanations to support his or her opinions); (2) consistency (how consistent the opinion is with evidence from other medical and nonmedical sources); (3) relationship with the claimant (including the length, purpose, nature, and extent of the relationship, and the frequency of examinations); (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies." §§ 416.920c(a)-(c). The first two factors—supportability and consistency—"are the most important factors" to consider when determining the persuasiveness of a medical sources medical opinions, and the ALJ must "explain how [he] considered the supportability and consistency factors" in the decision. § 416.920c(b)(2). The ALJ may, but is "not required to," explain how he considered the remaining factors. *Id.*

After a review of the record, the Court agrees with the Commissioner's arguments and holds that substantial evidence supports the ALJ's RFC assessment. The record demonstrates

7

that the ALJ meaningfully discussed relevant evidence before deciding Plaintiff was capable of sedentary work with certain limitations.

The ALJ began by providing a clear overview of Plaintiff's medical concerns as stated by Plaintiff and his family and determined that the medical records may be more persuasive than the statements of Plaintiff's family (Tr. 23). After a review of treatment records from Dr. Benny Thomas, dated June 11, 2012, through December 1, 2021, the ALJ found that Dr. Thomas' records did not include clinical examination findings, only subjective reports and medication list (Tr. 24). Furthermore, during that entire treatment period, the ALJ found that Plaintiff "consistently reported that the amount of pain relief … was enough to make a real difference in his life and was clinically significant," that Plaintiff's "overall functioning was better," and that Plaintiff "did not experience side effects from his pain relievers." (Tr. 24).

On January 7, 2021, Dr. John Demorlis conducted a physical on Plaintiff. Dr. Demorlis noted Plaintiff's "morbidly obese abdomen" and Plaintiff's claim that he gained weight because of a pituitary dysfunction (Tr. 24). The ALJ determined that outside of Plaintiff's obesity, Dr. Demorlis' examination concluded Plaintiff "was essentially normal," and noted the following:

> The claimant moved around easily and he had a normal gait. He was able to squat and walk on his heels and toes. He was tender in his back, but straight leg raise testing was negative with sitting and muscle strength was normal throughout. Range of motion testing was somewhat limited due to his obesity, but was within normal range. He would not allow his right knee to be examined because of hypersensitivity to touch, but there was no sensation loss noted. There was no edema, cyanosis, clubbing, skin changes, or other neurological deficits noted.

(Tr. 24). Dr. Demorlis noted that in his professional opinion, Plaintiff "cannot hold an eight-hour job. If anything, it would have to be sedentary, [sic] and he would have to be allowed to be moving around" (Tr. 24-25). The ALJ did not find Dr. Demorlis' opinion persuasive because the examination findings were "not consistent with a finding of inability to work, as it was shown

8

[Plaintiff] could squat, walk normally and move around easily" and [t]here was no decreased strength, sensation loss, or other neurological deficits noted." (Tr. 25).

On March 28, 2021, Plaintiff sought treatment in the emergency department at Texas County Memorial Hospital. The hospital noted that Plaintiff had some moderate swelling and joint effusion present (Tr. 25). The hospital instructed Plaintiff to "use crutches, wear an ACE wrap and avoid strenuous activity, but he was able to walk and bear weight as tolerated" (Tr. 25).

On July 28, 2021, Dr. Jeffery J. Mutchler evaluated Plaintiff at Mercy Clinic Orthopedics. Dr. Mutchler noted that Plaintiff was not in a "big hurry" to have knee surgery (Tr. 25). Dr. Mutchler recommended that Plaintiff see a dermatologist for another health condition before undergoing the knee surgery (Tr. 25).

On August 5, 2021, Plaintiff sought treatment in the emergency department at Phelp Health with complaints of sharp pain in his lower back. The ALJ noted the following:

> [Plaintiff] was in no distress. There was no swelling or deformity noted. There was no edema, decreased muscle strength, or other neurological deficits noted. During the examination by the emergency department physician, he walked with a normal gait (Exhibit 11F, pp. 3-4). He was supposed to be taking prednisone regularly, but he stated he was not taking it. He denied having radiating pain or numbness and tingling. He reported his pain had significantly improved after he was given injections of Toradol, Decadron, Norflex and Fentanyl (Exhibit 11, p. 6). He was given a prescription for Naprosyn and advised to do physical therapy two to three times a week. He was discharged that same day in stable condition.

(Tr. 26). On October 11, 2021, at the instruction of Dr. Thomas, Plaintiff underwent an MRI, which showed significant issues with his right knee. The ALJ noted there is no persuasive evidence Plaintiff underwent knee surgery as planned (Tr. 26).

On December 12, 2021, Dr. Thomas completed a medical source statement outlining Plaintiff's health issues and RFC. The ALJ summarized Dr. Thomas' medical opinion as follows:

9

> [Plaintiff] had the residual functional capacity to lift five pounds frequently and ten pounds occasionally; stand and/or walk continuously for ten minutes for a total of three hours in an eight-hour workday; sit continuously for 120 minutes for a total of two hours in an eight-hour workday; occasionally climb, balance, stoop, kneel, crouch, reach, handle, finger and feel; and avoid temperature extremes. Dr. Thomas noted it was medically necessary that the claimant recline and/or lay down for up to 30 minutes, one to three times a day; prop his legs up two to three feet, up to three times a day while sitting; and elevate his legs up to three times a day for 30 minutes. Dr. Thomas noted, in his opinion, the combination of the claimant's weight and orthopedic issues make his limitations even worse than what the objective medical evidence may support (Exhibit 13F).

(Tr. 26). The ALJ, however, did not find Dr. Thomas' limitations and opinions persuasive, noting:

> [the findings] are not supported by objective medical findings within the record as a whole, including Dr. Thomas' own treatment notes, which do not document any physical examination findings, but do repeatedly note the claimant's medications were working well with no noted side effects. There are no clinical signs or findings of ongoing or significant edema, decreased muscle strength, sensation loss or neurological deficits that would support findings that is [sic] was medically necessary for the claimant to take excessive breaks, recline or lay down, or elevate his legs throughout a normal workday. Furthermore, the limitations by Dr. Thomas do not preclude sedentary work.

(Tr. 26). Additionally, the ALJ found the functional capacity assessment report conducted by state agency medical doctors persuasive because their assessment that Plaintiff's severe physical impairments limited him to sedentary work were consistent with the record as a whole (Tr. 26). After addressing Plaintiff's history of chronic pain, medication side effects, obesity as a medically determinable impairment, and lack of finances as an impediment to receiving care, the ALJ determined that Plaintiff's statements were inconsistent with the record, including the medical evidence, and that Plaintiff failed to prove "more restrictive functional limitations." (Tr. 28).

Plaintiff contends the ALJ did not address the consistency factor. The Court disagrees. That the ALJ found Dr. Thomas and Dr. Demorlis' medical opinions unpersuasive does not indicate that he did not apply the consistency factor. The ALJ assessed objective medical evidence, carefully described various objective findings, and cited numerous sources of objective

10

medical evidence across Plaintiff's many medical visits and tests to substantiate why he discredited the findings of Dr. Thomas and Dr. Demorlis. Plaintiff also argues that the ALJ should have considered Dr. Thomas' opinion that Plaintiff needed to be allowed to move around while working. However, a treating physician's opinion does not automatically control, and the record must be evaluated as a whole. *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005). The ALJ sufficiently demonstrated that despite Plaintiff's numerous physical limitations, treatment records and the findings of state agency medical doctors supported a finding that Plaintiff could perform sedentary work. Although the ALJ could have been more explicit in separately discussing the consistency factor, the Court finds the ALJ was sufficiently detailed in his analysis to comply with the regulations discussed above.

The Court acknowledges that the record contains some conflicting evidence, and the ALJ could have reached a different conclusion. However, this Court's task is not to reweigh the evidence presented to the ALJ. The ALJ's weighing of the evidence fell within the available "zone of choice," and the Court will not disturb that decision merely because it might have reached a different conclusion. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Based on the foregoing, the ALJ's decision is supported by substantial evidence.

**B. Plaintiff's Need to Alternate Positions**

Next, Plaintiff argues that the ALJ's RFC finding failed to include Plaintiff's documented need to alternate positions (Doc. 17 at 4). Relying on SSR 96-9p and the medical opinions of Dr. Thomas and Dr. Demorlis, Plaintiff contends that the need to move around while working was a valid medical source opinion that should be included in his RFC. *Id.*

As noted by the Commissioner, neither physician stated that Plaintiff would need to alternate between sitting and standing, so SSR 96-9p is not implicated in this matter (Doc. 20 at

11

9). Dr. Demorlis opined that Plaintiff could not work an 8-hour job and if he did, "it would have to be sedentary, and he would have to be allowing to be moving around." (Tr. 617). As discussed above, the ALJ found this opinion unpersuasive, stating that Dr. Demorlis' examination findings showed that Plaintiff "could squat, walk normally and move around easily. There was no decreased strength, sensation loss, or other neurological deficits noted." (Tr. 25). Dr. Thomas stated that Plaintiff needed to "recline and/or lay down for up to 30 minutes, one to three times a day; prop his legs up two to three feet, up to three times a day while sitting; and elevate his legs up to three times a day for 30 minutes." (Tr. 26); *see also* (Tr. 737-41). The ALJ also rejected Dr. Thomas' medical opinion, finding it was unsupported by the record and even Dr. Thomas' own treatment notes, which did not include any physical examination findings (Tr. 26). The ALJ gave significant weight to the RFC assessment by state expert doctors who found that Plaintiff's severe physical impairments limited him to sedentary work, given their opinion with consistent with the entire record (Tr. 26). Given the record before the Court, the ALJ did not err in declining to add an alternating position limitation.

    C. Obesity

Finally, Plaintiff contends that the ALJ failed to consider Plaintiff's obesity when calculating his RFC. (Doc. 17 at 10). The Commissioner contends that Plaintiff is essentially asking the Court to reweigh the evidence. (Doc. 20 at 15).

"[W]hen an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid reversal." *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (citing *Brown ex rel. Williams v. Barnhart*, 388 F.3d 1150, 1153 (8th Cir. 2004)). After a review of the record, the Court concludes that the ALJ took Plaintiff's obesity into account throughout the entirety of his decision. First, the ALJ determined that Plaintiff's obesity was a

severe impairment (Tr. 16). Second, while discussing Plaintiff's medical history, the ALJ consistently referenced Plaintiff's obesity (Tr. 23-27). Finally, the ALJ explicitly addressed Plaintiff's obesity as a medically determinable impairment and recognized how the ailment, "in and of itself … may further exacerbate other impairments, such as type II diabetes mellitus, high blood pressure, sleep apnea, asthma, stroke osteoarthritis, depression, and cancer" (Tr. 27). After discussing a portion of SSR 19-2, which governs cases involving obesity, the ALJ noted numerous other limitations caused by obesity. The ALJ concluded that Plaintiff's obesity did not impact his ability to work, stating:

> [T]here is no persuasive evidence that [Plaintiff's obesity] has caused reduced respiratory capacity, skin disorders, edema, huge calluses upon the feet, coronary artery disease, diabetes mellitus, etc. There is no persuasive evidence that a treating physician has reported that the claimant's obesity results in severe symptoms and limitations of function, for twelve consecutive months in duration, despite compliance with treatment.

(Tr. 27). Plaintiff argues that the ALJ should have considered the medical opinion of Dr. Thomas when assessing the severity of Plaintiff's obesity. (Doc. 17 at 10). As mentioned earlier, the ALJ considered the entire record and did not find Dr. Thomas' medical opinion persuasive. Furthermore, Plaintiff's brief does not address the end of the same sentence, which required a report that Plaintiff's obesity resulted in severe symptoms and limitations of function for twelve consecutive months in duration despite compliance with treatment. As such, the ALJ adequately considered Plaintiff's obesity in making his RFC determination.

## VI.  CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is **AFFIRMED** and Plaintiff's complaint is **DISMISSED, with prejudice**.

/s/ Noelle C. Collins
HON. NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of March, 2024.